KNIGHT, Adm'r, *vs.* CLEMENTS, et al., Ex'rs.

[ACTION ON PROMISSORY NOTE BY ASSIGNEE AGAINST MAKERS.]

1. *Statute of limitations; payment by one of several joint makers; burden of proof on whom.*—In an action against one of several joint makers of a promissory note, who pleads the statute of limitations, and the plaintiff seeks to avoid the bar of the statute by a payment indorsed on the note, before the bar was complete, he must prove affirmatively—the burden is upon him—that the payment was made by the defendant before the cause of action was barred.

2. *Same, endorsement on note; what not evidence of.*—An endorsed payment, in such a case, on the note, is not of itself evidence of the fact of payment, nor of the time of payment, or by which of the joint makers the payment was made; the indorsement being the act of the party, to permit it to be evidence, without further proof, would be to permit him to make evidence for himself.

3. *Charge of court; what erroneous.*—A charge of the court that is inappropriate and inapplicable to the evidence, and calculated to mislead the jury, is erroneous.

4. *Same.*—In an action on a promissory note against one of several joint makers, where the statute of limitations is pleaded, and the plaintiff relies on a payment, indorsed on the note, to avoid the bar of the statute, if there is no evidence to show by which of the joint makers the payment was made, a charge to the jury, that if they find from the evidence that a payment was made on a day named, and there is no evidence to show by which of the particular obligors the payment was

7

made, they may, as a matter of law, presume it was made by the persons jointly chargeable, is erroneous.

5. *Same; what not erroneous.*—In such a case, a charge, that if the jury find from the evidence that the defendant was merely a surety on the note sued on, then the jury would not be authorized to presume, as a matter of law, that the payment indorsed on the note was made by the defendant, without further proof, is a proper charge, and to refuse to give it will be error.

6. *Same; written charge, refusal to give; when error.*—If a written charge is refused to be given, in the terms in which it is written, and is afterwards given with a qualification, against the objection of the party asking the charge, it is an error for which the judgment will be reversed.

APPEAL from the Circuit Court of Lowndes.
Tried before Hon. J. Q. SMITH.

This was an action commenced by Eliza Perry, by summons and complaint, against the appellant's intestate and two others, makers of a promissory note, of which the following is a copy:

"$545 00.—Twelve months after date, we, or either of us, promise to pay Zebulon Rudolph, sr., or bearer, five hundred and forty-five dollars, in specie, or its equivalent, for value received.

January 26, 1854.

     (Signed)   ALEXANDER REID,
             JESSE B. KNIGHT,
             C. W. KNIGHT.

The note being barred on its face, the complaint averred two payments, hereinafter referred to, before the bar was complete. Reid not having been served, the complaint was amended by striking out his name.

At the spring term, 1868, appellant's intestate, and C. W. Knight, (who was afterwards appointed administrator of J. B. Knight, and as such is the appellant in this case,) appeared, and each pleaded his separate plea, " in short by consent," 1st, That he hath not promised within six years next before the commencement of the action in this suit; 2d, Plaintiff ought not to maintain this action, because the suit was not commenced within six years next after the accrual of the right on said promissory note, &c.;

3d, That he was only one of the sureties of Alexander Reid on said promissory note, and that more than six years elapsed after the maturity of said note, and the accrual of the right of action thereon, before suit commenced, &c. The plaintiff replied, in short by consent, that the defendant, (appellant's intestate,) and other makers of the note, paid plaintiff, on the 26th January, 1856, the interest accruing to that date, and that defendants paid one hundred and forty-one dollars and fifty-three cents on said note, on the 26th January, 1859.

During the progress of the suit, there was a trial and verdict in favor of defendant C. W. Knight, and the other parties having died, their personal representatives were made parties complainant and defendant, respectively. At the spring term, 1868, the cause was tried, and a verdict rendered against C. W. Knight, as administrator of J. B. Knight, for eight hundred and thirty-one dollars and forty-eight cents.

On the trial, as shown by the bill of exceptions, the plaintiff introduced the note, offering J. F. Clements, who was executor of plaintiff, as a witness, and to prove by him " that the endorsements on the back of the note were in the handwriting of R. B. Rudolph; that said Rudolph was the general agent of Mrs. Perry, and transacted all her business ; and that said Rudolph is now dead." The defendant objected to the competency of said Clements as a witness to prove the facts that the endorsements were in the handwriting of Rudolph, and that he was Mrs. Perry's agent. The court overruled the objection, and permitted said Clements to testify that the endorsements of the notes were in the handwriting of Rudolph, and that Rudolph was Mrs. Perry's general agent, and is now dead ; to the overruling of defendant's objection, and the allowing Clements to testify, as well as to the admission of his evidence, defendant excepted." Without any further evidence, the plaintiff offered to read to the jury, as evidence, the endorsements of credits on the notes, and defendant objected, but the court overruled the objection, and permitted the endorsements to be read to the jury as evidence

of payment at the times stated, and defendant duly excepted. The plaintiff then rested."

It was testified by one witness that the note was executed by Reid as principal, and by J. B. and C. W. Knight as his sureties. Defendant, C. W. Knight, was introduced as a witness, and he testified that he wrote the body of the note; that Reid requested J. B. Knight (appellant's intestate,) to sign for him, and that he did so, saying he would sign for but few men; that the note was signed at J. B. Knight's house, whereupon Reid took the note, and Reid and witness went to the payee's house, where Reid got the money; it was a loan. This was all the evidence."

The court charged the jury, among other things, as follows : " If you find from the evidence that there has been, as a matter of fact, a payment made by defendant's intestate on the note sued on, and that six years have not expired from the time of payment, (excluding the time from the 11th of January, 1861, to the 21st of September, 1865,) to the commencement of this suit, then your verdict will be for the plaintiff for the amount of the note, with interest from the time it was payable to the present time, deducting therefrom the amount paid on the note as a credit, with interest thereon.

"2d. If you find from the evidence that there was a payment made on the note sued on, on the 26th of January, 1859, and that there is no evidence to show by what particular obligor the payment was made, you may, as a matter of law, presume it was made by the persons jointly chargeable with the payment."

To this charge defendant excepted. The defendant then asked the court to give the following written charge, viz.: "If the jury find from the evidence that Jesse B. Knight and C. W. Knight were merely sureties for Alexander Reid on the note sued on, then the jury would not be authorized to presume, as a matter of law, that the payments endorsed thereon were made by Jesse B. Knight and C. W. Knight, or by either of them, without further evidence." The court refused the charge, and defendant excepted, &c.

The defendant then asked the court to give the follow-

ing written charge, viz.: "That the endorsed credits on the note are no evidence against Jesse B. Knight or his administrator, that any payment was made, or of the time of such payment; and that unless the evidence shows that Jesse B. Knight, in his life time, made the payments endorsed on the note, then the jury must find for the defendant, the only issue being on such payments." The court refused to give the charge as asked, and would not give it without a qualification as hereinafter stated, and the defendant excepted to the refusal to give the charge as asked, thereupon the court gave the charge last named, but with the qualification that charge No. 2 (set out hereinbefore,) must be taken as a qualification, and defendant excepted to the charge thus given, with said qualification, and excepted to the action of the court in giving the charge thus qualified.

The errors assigned are—

1. That the court allowed Clements to testify, as shown in the bill of exceptions.

2. That the court permitted Clements to testify to the credits on said note, against the objections of the defendant, as shown in the bill of exceptions.

3. That the court permitted the endorsements on said note to be read to the jury as evidence, against the objection of the defendant.

4. That the court gave charge No. 2, as shown in the bill of exceptions.

5. That the court refused to give the first charge asked by the defendant.

6. That the court refused to give, without qualification, the second charge asked by the defendant.

7. That the court gave the charge qualified, as shown in the bill of exceptions.

8. That the court erred, as shown in the bill of exceptions.

WATTS & TROY, for appellant.—Now, on whom was the burden of proof under this issue? It was clearly on the plaintiff. His was *affirmative*, and on general principles he was bound to prove the truth of the *affirmative* facts in

his replication. He averred that Jesse B. Knight made the payments therein stated. Knight in his plea had denied that he had, in any way, promised within six years, &c.

Whenever a payment is relied on to take the case out of the statute of limitations, the burden of proving such payment is on the plaintiff.—See 2 Greenl. 440, and the authorities cited by him ; and especially *Bell v. Morrison*, 1 Peters, (U. S.) 362 ; see, also, *Watson v. Dale*, 1 Porter, 250 ; *McGehee v. Greer*, 7 Porter, 538.

The party relying on a credit *endorsed* on the note, must prove the date of the payment. In other words, he must *prove the payment*, and the time thereof, independent of such endorsed credit. He can not make evidence for himself. The endorsed credit is simply the unsworn declaration that the party received payment at the time stated. And his declarations thus made are not competent evidence when the statute of limitations is pleaded.—See *McGehee v. Greer, supra*.

Whatever discussion may have been had in England, and in States of the American Union, as to the effect of a payment by one joint maker of a promissory note on the other, in relieving the case from the statute of limitations, it is settled, so far as Alabama is concerned, by our decisions and by statute.

In *Lowther v. Chappell*, (8 Ala. 353,) the question was settled, if not before, in this State, that a payment by *one* joint maker of a note did not prevent the statute of limitations from running as to the *other*.

See, also, *Wilson v. Torbet*, (3 Stew. 302,) an opinion by Judge Reuben Saffold, evidencing, as all his opinions did, great research and patient investigation. The same doctrine is recognized in *Russell v. LaRoque*, (11 Ala. 352.) And more recently in the case of *Myatts v. Bell*, (41 Ala. p. 232, paragraph 5 of the opinion,) the same doctrine is asserted.

The elaborate opinion of Judge Story, in *Bell v. Morrison*, (1 Peters, before cited,) would seem to be conclusive on the subject. See, also, (although the text of Angell on

Lim. is against this view,) what is said in the long note 4 on page 334 of Angell on Limitations.

But the statute of Alabama seems to have adopted almost the language of *Lowther v. Chappell*, (8 Ala. *supra*.)

Section 2914 of the Revised Code expressly declares that " no act, promise or acknowledgment is sufficient to remove the bar" of the statute of limitations, "or is evidence of a new or continuing contract, except a partial payment made upon the contract by the party sought to be charged before the bar is complete, or an unconditional promise in writing, signed by the party to be charged thereby."

Here it is expressly declared that the payment must be shown to have been made by the party sought to be charged. Who· is the party sought to be charged in this case? Jesse B. Knight—or now that he is dead, his administrator, C. W. Knight.

Unless, therefore, it had been shown by proof that the payments on the note credited were made by *Jesse B. Knight, at the time of their date,* neither he nor his administrator can be barred of the benefit of the plea.

The charge of the court was directly in the teeth of these decisions and of the statute, and was clearly erroneous.

The court charged, that in the absence of proof as to who made the payments on the note, as *matter of law,* such payments were made by *Jesse B. Knight.* In this he invaded the province of the jury.

The refusal to give the charge asked by defendant was clearly erroneous. The payments endorsed on the note, without any proof of actual payment and the time thereof, was no evidence whatever against Jesse B. Knight.— See the authorities, *supra.*

The refusal to give the charge as asked was error, whether the qualification was correct or not.—See *Edgar v. State,* 43 Ala. 45. But the qualification was clearly erroneous, for the reasons above stated.

The testimony of Clements was incompetent. The endorsements on the note in the handwriting of Dr. B. B. Rudolph were no evidence. These were nothing more than the unsworn statements of a witness—were merely hearsay. There was no evidence to show when these endorsements

were made, nor that any payments were actually made.
For aught that appeared by the proof, these endorsements
may have been made on the day before the suit was brought,
for the express purpose of preventing the statute of lim-
itations from barring a recovery. —See *McGehee v. Greer,*
7 Porter, *supra,* and any work on hearsay evidence.

The issue made by the plea and replication was, whether
Jesse B. Knight had made these payments. This put the
burden on the plaintiff. The court shifted the burden from
the plaintiff, and put it on Knight, and required him to
prove a negative—that he did *not* make these payments.

FITZPATRICK & WILLIAMSON, *contra.*—Were the endorse-
ments on said notes properly submitted to the jury, on the
testimony of Mr. Clements, as evidence? That they were,
see the following authorities: 1 Greenl. Ev. §§ 121–2, 151,
147; *Everly v. Bradford,* 4 Ala. 373. The endorsements
were not made by party owning the note, but by her agent.
*Clemons v. Patton,* 8 Ala. 289; 1 Phil. Ev. (C. & H. & Ed-
wards' Notes,) p. 366. In neither of the cases from Por-
ter's Reports were the endorsements made by a *deceased
person.*

What was the effect of their admission?—or, of what
were they evidence? They were evidence of what they
state—that the money was paid, and the time; and as the
note was joint and several, that *all the parties* bound in the
note made the payments. All the parties to the note were
liable, *jointly* and *severally.* The evidence is, that two pay-
ments were made; it does not appear who, of these par-
ties, actually paid. The law, then, must be looked to, to
say who paid. As all are equally and jointly liable, the
presumption is that the payments were jointly made. The
presumptions of law, *unrebutted,* are as positive as the di-
rect testimony of a witness. Suppose Dr. R. had been
alive, and as a witness in this cause had testified—" I re-
ceived as payment on this note, on the 26th day of Janu-
ary, 1859, $145," and no other testimony was introduced?
Certainly it would mean that the payment was made by
*those liable to pay.* If the payment was made by *all,* under

the presumptions of law, it is certainly by a "party sought to be charged."

The second charge asked by the defendant was given by the court as asked, but the court referred the jury to charge two as given as qualifying the same. Defendant has not been injured, if charge two as given by the court is correct.

The charge No. 1 asked by defendant and refused was objectionable in this, that even if Jesse R. and C. W. Knight did furnish the money, or join in making the payment, no recovery could be had, unless one or both of them actually made the payments. It was calculated to mislead the jury, in stating to the jury that they could not "presume as matter of law," because the jury have nothing to do with legal presumptions.

It being a joint note, does the payment made by any one of the obligors, take it without the influence of the statute as to all? The question has been decided differently in different States, but reason and weight of authority establish the principle that a payment by one of several obligors, *made before the bar is complete,* extends the statute as to *all.* These authorities show it: *Corlies v. Fleming,* 32 N. J. 349; *Cox v. Bailey,* 9 Georgia, 467; *Bound v. Lathrop,* 4 Conn. 336; *Clark v. Sigourney,* 17 Conn. 511.

The second charge given by the court is a clear expression of the law, and the charges asked, if given, would have been contrary to law. That charge expresses the idea that the obligation being joint, and a payment appearing endorsed on the paper, but no proof as to which of the signers made the payment, the law presumes that it was done by all the persons jointly bound, and the matter of principal and surety does not enter into the consideration of the question.

There is some slight proof as to which of the obligors got the money (borrowed); but there is no proof as to which one of the obligors made the payments. In the absence of that proof, the law presumes it was done by all.— *Coffin v. Bucknam,* 3 Fair. (Maine,) 491; *Addams v. Seitzinger,* 1 Watts & S. 243; *Smith v. Sims,* 9 Geo. 418.

It would not comport with that high integrity which the law and the courts demand at the hands of all litigants, to

allow the surety, when sued upon a joint obligation, to claim the benefit of the payments as a discharge of the debt, as far as they go, and the next moment repudiate them; or, in other words, insist that they (the payments) shall not be taken as evidence, as against him, to prevent the bar of the statute. The court will presume, in the absence of proof to the contrary, that these payments were made " by the party sought to be charged," there being no evidence in the record showing which one of the obligors made the payments.—Revised Code, § 2914.

The court will observe that the case at bar is distinguishable from the two cases of *Lowther v. Chappell*, (8 Ala. 353,) and *Myatts v. Bell*, (41 Ala. 222.) 1st. Both of those cases were *partnerships*. 2d. In both of those cases the proof showed who made the payments, while in this, there being an absence of proof showing which one of the obligors made the payments, the law presumes and assumes that it was paid by all, and is a full compliance with the section of the Code above referred to.

PECK, C. J.—In an action on a promissory note made by three parties, against one of the makers, who pleads the statute of limitations, and the plaintiff seeks to avoid the bar of the statute by a payment indorsed on the note before the bar was complete, he must prove affirmatively— the burden is on him—that the payment was made by the defendant before the cause of action was barred.

The statute requires this. It declares that "no act, promise, or acknowledgment is sufficient to remove the bar to a suit, or is evidence of a new and continuing contract, except a partial payment made upon the contract *by the party sought to be charged*, before the bar is complete, or an unconditional promise in writing, signed by the party to be charged thereby."—Rev. Code, § 2914.

In this case the plaintiff, to avoid the bar of the statute of limitations, relied on two alleged payments indorsed on the note sued on, before the bar of the statute was complete.

The suit was commenced in the name of Eliza Perry, who in the complaint is averred to be the owner of the

note. The note is payable to one Zebulon Rudolph, sr., or bearer. On her death, during the progress of the cause, the appellees, her executors, were made parties plaintiff.

The note was made by one Alexander Reid, Jesse B. Knight, (plaintiff's intestate,) and one C. W. Knight, and all three were made defendants. The summons not being served on said Reid, the complaint was amended by striking out his name. Thereupon, the death of Jesse B. Knight was suggested, and appellant, his administrator, was, at a subsequent term, made a defendant in his stead.

It seems, in the mean while, and before the death of Eliza Perry, the original plaintiff, a trial was had between her and defendant, C. W. Knight, on pleas of the statute of limitations, filed by defendants before the death of said Jesse B. Knight, and there was a verdict and judgment for said C. W. Knight.

Afterwards, the cause was tried between the appellees, as the executors of the said Eliza Perry, and appellant, the administrator of said Jesse B. Knight, on the original pleas of the statute of limitations. These pleas were filed by each defendant separately, each for himself.

The note, on its face, being barred by the statute, the complaint averred that two payments had been made on it after maturity, and before the bar of the statute was complete.

On that trial, one of the plaintiffs was introduced as a witness, and it was offered to be proved by him that the indorsements of the payments on the notes were in the handwriting of one R. B. Rudolph; that said Rudolph was the general agent of said Eliza Perry, and transacted all her business, but was then dead. The appellant objected to the competency of said witness to prove that said indorsements were in the handwriting of said Rudolph, and that he was the agent of Eliza Perry. The court overruled the objection, and appellant excepted. The witness was then examined, and stated that said indorsements were in the handwriting of said R. B. Rudolph; that he was the agent of said Eliza Perry, and was dead. On this evidence, the plaintiffs offered to read said

indorsements to the jury. To this the appellant objected, his objection was overruled, and he excepted. Thereupon, the court permitted the said indorsements to be read to the jury, as evidence of said payments at the times stated in said indorsements. To this appellant objected, his objection was overruled, and he excepted. The plaintiff then rested.

The appellant then introduced a witness, who testified that said note was made by said Reid as principal, and the other two joint makers as his sureties. The appellant was then examined as a witness, and testified that said note was written by him, and signed by said Reid, Jesse B. Knight, and himself; that said Jesse B. Knight signed the note at the request of said Reid, saying, at the time, he would sign for but few men ; that said note was made at the house of said Jesse B. Knight ; that said Reid took the note, and he and witness went together to the house of the payee, said Zebulon Rudolph, sr., and passed the note to him, and he gave the money for it to said Reid ; that it was a loan of money on said note.

This was all the evidence in the case. On this evidence the court gave two charges to the jury. The second was excepted to by the appellant, and is as follows, to-wit : " If the jury believe from the evidence that there was a payment made on the note sued on, on the 26th day of January, 1859, and that there is no evidence to show by which particular obligor the payment was made, you may, as a matter of law, presume it was made by the parties jointly chargeable with the payment." To this charge the appellant excepted.

The appellant then asked the court to give the following charge, to-wit : " If the jury believe from the evidence that Jesse B. Knight and C. W. Knight were merely sureties for Alexander Reid on the note sued on, then the jury would not be authorized to presume, as a matter of law, that the payments indorsed on the note were made by Jesse B. Knight and C. W. Knight, or by either of them, without further proof." This charge the court refused, and appellant excepted.

The appellant then asked the court to give the following

written charge, to-wit : " That the indorsed credits on the notes are no evidence against Jesse B. Knight, or his administrator, that any payment was made, or the time of such payment ; and that unless the evidence showed that Jesse B. Knight, in his life time, made the payments indorsed on the note, then the jury must find for the defendant, the only issue being on such payments." The court refused to give this charge as asked, and the defendant excepted. The court thereupon gave the said charge, but with the qualification that the charge No. 2 must be taken as a qualification thereof. And the appellant excepted to the charge thus given, with the qualification.

1. The indorsements on the note, on the evidence of the plaintiffs, were utterly worthless to prove either that the alleged payments were made, or by whom made, or when made; and without this, they should not have been permitted to be read to the jury. If they had been proved to be in the handwriting of the appellees' testator, said Eliza Perry, without more evidence, to permit them to be read to the jury to defeat the bar of the statute, would have been to permit her to make evidence for herself. In the case of *McGehee v. Greer*, 7 Porter, 537, the court say : "A payment on a note is, we think, precisely equivalent to an admission that, at the time of the payment, the debt is due ; but, it is necessary that the party relying upon such payment should prove the date of the payment. To permit that fact to be established by the credit entered on the note, would be, manifestly, allowing the party relying on it to make evidence for himself."

Where a party relies on an indorsed payment on a note to stop the operation of the statute of limitations, "such payment must be proved to have been made *at the time it bears date*."— *Watson v. Dale*, 1 Porter, 247. So, too, an admission made by a principal maker of a note, coupled with a promise to pay, will not revive the debt so as to take it out of the bar of the statute of limitations, as against a co-maker, who is a surety ; nor will payments made by him have the effect to prevent the running of the statute.—*Lowther et al. v. Chappell*, 7 Ala. 353 ; and in *Myatts & Moore v. Bell*, 41 Ala., it is held that " a payment

by one of several joint debtors, before the statute has completed a bar, will not prevent the completion of the bar as to the others, at the expiration of the time within which the statute required suit to be brought on the original evidence of debt relied on to sustain the action." The court below, therefore, clearly erred in permitting these indorsements of credits on the note to be read to the jury as evidence of payments made at the times stated in said indorsements, without further proof of the fact of the payments, and by whom, and when made.

2. The second charge of the court, on the evidence in this case, to say the least of it was inappropriate and inapplicable, if not abstract, and was well calculated to mislead the jury, and should not have been given.

3. The first charge asked by appellant was a very proper charge, was warranted by the evidence, and should have been given. The evidence by no means authorized the jury to presume, as a matter of law, that the payments were made by Jesse B. Knight or C. W. Knight, or either of them, especially if they believed from the evidence they were the mere sureties of said Reid. In that case, the presumption was directly the other way.

4. The second charge in writing should have been given or refused in the terms in which it was written (Revised Code, § 2756); and in refusing to give it in the terms in which it was written, and giving it with the qualification stated, against the objection of the appellant, the court erred.—*Edgar v. The State*, 43 Ala. 312.

For the errors herein stated, the judgment is reversed and the cause is remanded, at the costs of the appellees.