This appeal arises from the circuit court's grant of summary judgment for the defendant on all of the counts set forth in the plaintiff's complaint. We affirm.
On June 20, 1984, plaintiff, C. Lenoir Thompson, filed a complaint against the defendant, Milton C. Wilson, claiming in Count One that on January 27, 1978, the defendant entered into a lease agreement with plaintiff's son which provided for the lease of certain real property for a period of five years and which provided that the plaintiff's son would have the right to renew the lease in its entirety for three additional five-year terms. It was further stated in the complaint that at the time the lease was negotiated, the defendant knew that the lessee was intending to operate a barbecue business on the property and that in furtherance of this objective the plaintiff's son had erected a building on the property at his expense. In September 1981, the lease was assigned by plaintiff's son to plaintiff. *Page 658 
According to the complaint, about the time it became necessary to give notice to exercise the option to renew, plaintiff and defendant entered into negotiations which led plaintiff to believe that defendant intended to purchase the improvements on the property for the sum of $10,000.00. However, plaintiff says defendant dragged out the negotiations to the extent that plaintiff failed to exercise his option to renew the lease, and plaintiff claims that such conduct on the part of the defendant was taken with the intent to defraud plaintiff out of the improvements on the property.
Plaintiff made other claims in Count Two and amended Count Two-A. He does not challenge the adverse rulings on those counts.
Defendant, in his answer to plaintiff's complaint denied that he had entered into any negotiations concerning purchasing improvements placed on the leasehold property by the plaintiff's son, or any agreement concerning these improvements. In addition thereto, and we believe this to be dispositive of plaintiff's case, defendant specifically raised two affirmative defenses by way of special pleas: The Statute of Frauds and the statute of limitations. Defendant also claimed that plaintiff, by his allegations, was attempting to modify, by an alleged parol agreement, the terms of a written contract required to be in writing by the Statute of Frauds.
In plaintiff's brief to us he claims that the sole issue for determination on this appeal is whether the trial court erred in granting summary judgment when the complaint and answer provided a factual dispute in the evidence, thus providing a scintilla of evidence supporting plaintiff's contention. Strangely, he does not attempt, by way of original brief or reply brief (he did not file a reply brief), to refute defendant's claim in his special pleas that the Statute of Frauds and the statute of limitations acted as a bar to recovery in this case. Under these circumstances, defendant is entitled to suggest another issue. He does. And we agree that the dispositive issue in this case is:
 Are there any affirmative defenses required to be pleaded by Rule 8 (c), A.R.C.P., such as the Statute of Frauds and statute of limitations, which, if properly pleaded and proven would allow the trial court to grant a summary judgment for defendant, even if there exists a dispute as to the material facts constituting plaintiff's prima facie case?
By affidavit, deposition, and exhibits, the following evidence was adduced by defendant. The primary term of the lease, dated January 27, 1978, expired on May 8, 1983. The last day plaintiff had to exercise his first option under the lease was November 8, 1982. Suit was not filed in this case until June 20, 1984, more than a year and a half after the last day plaintiff could have exercised his option and more than a year after the lease had expired. In response to a request made by the defendant that plaintiff bring all written instruments bearing on the claim made concerning the leasehold property, plaintiff responded that he had no written instruments other than the lease itself.
Although plaintiff, in his complaint, alleged that the defendant began negotiating with him at or near the time plaintiff was to exercise his option to renew, and that plaintiff began his negotiations concerning the purchasing of the improvements on the property at or near the time he was to exercise his option to renew, in his deposition, plaintiff contradicted this statement in his complaint. The following is plaintiff's testimony on this point:
 Q. All right. Now, just so that we will have no misunderstanding —
A. Yes. I've had mine with him.
 Q. Right. You are telling me, then, that the first time that you entered into negotiations with Mr. Wilson at which time Mr. Wilson was going to supposedly buy this property was some time in June of 1983; is that correct?
 A. I would say that or just immediately after. I'll say within thirty days of the day Doggett was up here. *Page 659 
Q. Thirty days after —
 A. Within thirty days after he came up here. It may have been within ten days or twenty. I didn't keep exact count. I had the thirty days identified in a way at home.
 Q. Let me — listen to my question, now. Within thirty days after Mr. Doggett's negotiations ended?
A. Yes.
 Q. All right. So Mr. Doggett's negotiations ended June 21 —
A. Right.
Q. — 1983?
A. Right. (CR Supp. A-42).
 Q. So your negotiations with Mr. Wilson would have begun —
A. Some time after.
Q. — some time after June —
A. Yes.
Q. — 21, 1983?
On the other hand, testimony adduced by defendant makes it very clear when plaintiff thought his rights were terminated. In plaintiff's deposition, he stated the following:
 Q. Mr. Thompson, can you tell me, please, sir, according to Defendant's Exhibit Number 2, which is the lease executed by your son on January 27th, 1978, which was thereafter assigned to you, when did the primary term of that lease expire?
 A. I don't know. I never studied it to that extent. You can find it in there as well as I can, but I never looked for it. I was trying to sell it before it expired.
Q. Do you know when it expired?
 A. No. He never gave me a notice in writing of any kind.
 Q. Does the lease require him to give you a notice as to when the lease expires?
 A. I would assume if I wanted to renew it I would have to give him one, but I assumed he had to give me a notice.
[Emphasis added.]
As we have previously stated, defendant raises two special pleas of affirmative defense, namely, the Statute of Frauds and the statute of limitations. In addition thereto, he argues the rule that a parol agreement cannot be used to undermine a written lease required to be in writing by the Statute of Frauds. We will discuss defendant's claims with reference to these defenses together, since they act in tandem to deny plaintiff's recovery. They will be discussed as each bears on the issue as reframed above.
Code 1975, § 8-9-2 provides as follows:
 In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
. . . .
 (5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller;. . . .
The thrust of plaintiff's complaint is that defendant began negotiations with him concerning the purchase of improvements, in the form of a building which had been put on the leasehold premises, for the sum of $10,000.00. Plaintiff admits that he has no written expression of this; therefore, his complaint flies in the teeth of the Statute, although on the face of the complaint and defendant's answer, plaintiff has shown a genuine fact dispute, namely, the dispute as to whether defendant did agree to purchase the improvements. This is not enough when the defendant sets up the special plea of the Statute of Frauds. We have held that in such land situations, where the Statute of Frauds has been pleaded, it is incumbent upon the opposite party to show some reasons why the Statute is not applicable in his case. Moore v. Merchants and Planters Bank, 434 So.2d 751,754 (Ala. 1983); Hunter v. State, 293 Ala. 226, 229,301 So.2d 541 (1974). Such a rule is fair to plaintiff, since plaintiff alone would be in the best position to explain the *Page 660 
special circumstances why the Statute should not apply to him.
We have already said that plaintiff, in neither affidavit, deposition, brief, nor reply brief, has produced a scintilla of evidence to show why the Statute would not apply. We are of the opinion, and so hold, that even though plaintiff may produce a genuine issue of material fact, if the other side makes out a prima facie case under a special plea of the affirmative defenses of the Statute of Frauds or the statute of limitations, it is incumbent upon the opposite party to come forward with at least a scintilla of proof that these defenses do not apply to him. Otherwise, summary judgment is appropriate.
Although the statute of limitations argument is not as open and shut as the Statute of Frauds argument, it nevertheless is also applicable in this case. Under § 6-2-39, Code 1975, "all actions for fraud must be commenced within one year." Section6-2-3 attempts to alleviate the harshness of that rule by providing that one can file an action for fraud within one year of the discovery of the facts constituting the fraud. The question then arises as to when fraud is discovered for statute of limitations purposes. The answer, from the cases, is that the law considers it discovered when it ought to have been discovered. Willcutt v. Union Oil Co., 432 So.2d 1217 (Ala. 1983); Papastefan v. B L Const. Co., 385 So.2d 966 (Ala. 1980); State Security Life Ins. Co. v. Henson, 288 Ala. 497,262 So.2d 745 (1972). Plaintiff, in his deposition, stated that he was trying to sell the building before his lease expired. If we take the date of November 8, 1982, as the last day plaintiff could exercise his option — and there is no dispute about that date — plaintiff's suit filed on June 20, 1984, was clearly more than one year from the time he must have known that defendant was not going to purchase his property. Therefore, the statute of limitations is clearly applicable. Even if we take the actual date the lease expired, May 8, 1983, plaintiff's suit on June 20, 1984, was filed more than a year from that date.
But although plaintiff says in his complaint that the negotiations began at or about the time for him to exercise his option, in his deposition he said the negotiations began in June or July 1983. If the negotiations began in June or July 1983, then there cannot be any fraud at all in this case, since plaintiff's option, as well as his lease, had expired by this time — the option expiring on November 8, 1982, and the lease itself expiring on May 8, 1983. This is true because at all times plaintiff contends that he was trying to sell the property prior to the time that his lease expired.
The problem in this case is exacerbated because plaintiff claims that his problem was caused by the fact that he did not really know when the lease and option expired. Rather than provide comfort to plaintiff, his assertion of ignorance of the terms of the lease operates to his disadvantage. In StateSecurity Life Ins. Co. v. Henson, 288 Ala. 497, 262 So.2d 745
(1972), this Court said:
 When a party relies on his ignorance of facts material to his right as an excuse for his laches and delay in asserting them, he must show by distinct averments why he was so long ignorant, and acquit himself of all knowledge of facts which would put him on inquiry, and must show how and when he first acquired a knowledge of the facts. James v. James, 55 Ala. 525. This principle was announced in Scruggs v. Decatur Mineral Land Co., 86 Ala. 173, 5 So. 440, . . . . Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 329, 330, 94 So. 606, 611.
Such an argument is particularly unavailable to the plaintiff in this case, since he assisted his son in redrafting the paragraph of the lease dealing with the six-month option to purchase. Therefore, with the statute of limitations defense, as with the Statute of Frauds defense, summary judgment is appropriate where the moving party has made out a prima facie case of the existence of these defenses and the opposite party has failed to come forward with even a scintilla of proof to bring himself out from under these bars. *Page 661 Moore's Federal Practice, Vol. 6, Part 2, Paragraph 56.17[4], p. 56-735 et seq. (1985); 2 C. Lyons, Alabama Rules of CivilProcedure Annotated, (1973), n. 35 et seq. to commentary on Rule 56, p. 367, et seq.
It is obvious from the foregoing facts that inasmuch as plaintiff had no written agreement other than the lease, his assertions of an agreement to purchase improvements was an attempt to modify by parol agreement the terms of a written lease required to be in writing by the Statute of Frauds. We have clearly held that such is not legally permissible. Suterv. Arrowhead Investment Co., Ltd., 387 So.2d 815, 817 (Ala. 1980). Inasmuch as the parol evidence rule excludes this alleged agreement, plaintiff's claim has no substance, and summary judgment was appropriately rendered for the defendant.Moore's Federal Practice, Vol. 6, Part 2, Paragraph 56.17[43], p. 56-954 et seq.; Parish v. Howard, 459 F.2d 616 (8th Cir. 1972); Vickery v. Fisher Governor Co., 417 F.2d 466 (9th Cir. 1969).
For the foregoing reasons, the trial court's summary judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.